# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOEVONE M. JORDAN,**

    Petitioner,

 v.               Case No. 17-C-230

**BYRAN BARTOW, Director,**
**Wisconsin Resource Center,**

    Respondent.

## DECISION AND ORDER

The petitioner, Joevone M. Jordan ("Jordan"), is a prisoner in Wisconsin custody seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2010, Jordan was convicted of one count of first-degree intentional homicide, Wis. Stat. § 940.01, and one count of attempted robbery, Wis. Stat. §§ 939.32, 943.32(2). Jordan was sentenced to life in prison on the homicide charge and 20 years (12.5 in prison and 7.5 years of extended supervision) on the robbery charge. ECF No. 19-1.

The parties have briefed the petition for a writ of habeas corpus and the petition is ready for disposition.[1] For the reasons stated below, the petition for writ of habeas corpus is denied.

---

[1] On October 2, 2018, Jordan filed a motion for the court to appoint counsel on his behalf. There is no statutory or constitutional right to court-appointed counsel in federal civil litigation. *Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019). A district court, however, "may appoint counsel if 'the interests of justice so require.' " *Taylor v. Knight*, 223 Fed. App'x 503, 504 (7th Cir. 2007) (citations omitted) (quoting 18 U.S.C. § 3006A(a)(2)(B)). For this requirement to be met, the court determines if the plaintiff "made a reasonable attempt to secure counsel on his own." *Giles*, 914 F.3d at 1053 (citing *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013)). Then, the court must determine "whether the difficulty of the case— factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). I find that while petitioner has indeed made a reasonable attempt to secure counsel on his own, ECF No. 24, I do not find that the difficulty of the case exceeds the petitioner's ability to present his arguments. The petitioner has presented enough information

## I. BACKGROUND

Roland Haefner was the proprietor of a candy store at 8305 West Silver Spring Drive in Milwaukee, WI. On the evening of June 17, 2009, the proprietor of a nearby shop in the same building heard someone demand money on Mr. Haefner's side of the building and then heard a gunshot. The proprietor ran to Mr. Haefner's booth where she found him unresponsive, before running to a nearby daycare to call 911. Authorities found Haefner lying face-up with a gunshot wound to the chest and later pronounced him dead at the scene. After news of the shooting aired on television, Jordan's mother asked one of Jordan's cousins to ask Jordan about his involvement in the shooting. During the ensuing conversation, Jordan admitted that he had shot the candy store owner. The cousin then proceeded to tell his wife and the police about the details of his conversation with petitioner, alerting authorities to his potential involvement in the shooting.

### A. Fake handgun

Shortly before his arrest, petitioner went to the home of an acquaintance, Sherita Carter. Petitioner appeared upset because he thought his family was going to turn him in for $2,000 in reward money. *See* ECF No. 19-15 at 76-77. Petitioner told Carter that he had a gun and that if the police tried to arrest him, that "[h]e wasn't going to jail. He was going to have a shootout with them." *Id.* at 79: 9-10. Carter then called the police. *Id.* at 78:16-19. Upon arrival, the police found petitioner hiding behind a door in an upstairs room and arrested him. Among the items found on petitioner was a fake handgun tucked in the waistband of his pants. ECF No. 19-16 at 15:3-11.

---

such that I can evaluate his petition and briefs against the issues presented. Therefore, I deny Jordan's motion to appoint counsel.

Jordan filed a pretrial motion to suppress any evidence that he possessed a fake handgun when he was arrested, arguing that such evidence was irrelevant and misleading. ECF No. 19-11 at 3-4. The trial court disagreed, concluding that possession of the fake handgun at the time of arrest was admissible to show Jordan's "consciousness of guilt." *Id.* at 7:4. The trial court held that the fake handgun's probative value was not "unduly prejudicial under [Wis. Stat. §] 904.03," finding there was no risk of jury confusion where the weapon used to commit the offense, and that bore Jordan's fingerprints, was a shotgun. *Id.* at 8:13.

## B. Call #6

While in custody, Jordan made statements to investigators that were ultimately suppressed by the trial court as violating Jordan's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). ECF No. 19-10 at 13:6-17. While in jail awaiting trial, Jordan made several telephone calls, some of which were recorded and transcribed. On one such call to his mother ("Call #6"), Jordan referenced the ultimately suppressed statements that he made to the police:

[Mother:] did you even tell them where the gun came from

[Jordan:] uh hum

[Mother:] why

[Jordan:] I told them it was stolen but no I didn't tell them who it came from

[Mother:] why

[Jordan:] there wasn't no need to

[Mother:] ok, and they ask you questions about what

> [Jordan:] about where it happened, I mean what happened and all that stuff, then they got me like, then they got my voice like, they ain't got me on camera, like they was saying they did, they got my voice on the surveillance, of me, what was going on in the store but they didn't know who it was.
>
> [Mother:] ok, and what was you saying
>
> [Jordan:] that's what's in the statement, that's what's all the stuff that I was saying it was all in the statement. \_\_\_\_\_ police
>
> [Mother:] and what was it
>
> [Jordan:] it said that the guy in the store supposedly said put the money in the bag, the guy got up saying, he, he wasn't going to[,] he didn't have to and then the gun clicked, they said it like the trigger was pulled but the gun didn't go off, the gun was cocked again and it was shot.
>
> [Mother:] ok, so still I don't know what that means
>
> [Jordan:] that means that it was intentional like they trying to say
>
> [Mother:] that's what they saying

ECF No. 19-5 at 3-4.

At trial, Jordan moved to suppress the call, arguing that Jordan gave a "summarization" of the statement that the court had already ruled inadmissible. ECF No. 19-11 at 9:19. Admitting the call would thus be a "back-end way of getting the [suppressed] statement to the jury." *Id.* What Jordan told his mother on Call Number 6 was "exactly what [Jordan] told the police in the custodial statement that [the court] ruled inadmissible." *Id.* at 12:21-23. The trial court disagreed, finding no constitutional violation that would prohibit introduction of the call. Evidence from the call was "not compelled information by the State." *Id.* at 16:5-6. The court emphasized that the constitutional protections at issue exist to preclude officers from testifying as to what a defendant may have said in a constitutionally improper interrogation but "don't preclude

4

[defendant] from relaying other information to third parties." *Id.* at 16:24-17:1. The trial court also found no basis for preclusion under the fruit of the poisonous tree doctrine. *Id.* at 18:4-5. This phone call between Jordan and his mother was played for the jury at trial. ECF No. 19-16 at 40.

**C. State court appeals**

After being convicted by jury on both counts, Jordan appealed his conviction to the Wisconsin Court of Appeals. *See* ECF No. 19-2; ECF No. 19-4. Jordan raised admission of both the fake handgun and Call #6 as grounds for overturning his conviction. ECF No. 19-2 at iii. Jordan argued that because the fake handgun had zero probative value, its use at trial could serve no other purpose than to confuse the jury and unfairly prejudice him. *Id.* at 15. Jordan did not use the fake handgun to resist or obstruct his arrest, nor was it connected in any way to the crime. ECF No. 19-4 at 1. Admission of the fake handgun was not harmless because it left the jury free to speculate as to why he had it and whether he used it in connection with other crimes. *Id.* at 2.

Further, Jordan argued that the admission of Call #6 constituted impermissible fruits of a statement given in violation of a defendant's *Miranda* rights, citing the Wisconsin Supreme Court's decision in *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899. ECF No. 19-2 at 17. Call #6 did not contain any statement regarding what happened on the date of the offense, but rather was based entirely on questions asked by the police after Jordan requested counsel. *Id.* at 21. Call #6 would not exist but for the police's violation of Jordan's *Miranda* rights. *Id.* Thus, Jordan's utterances Call #6 were the fruit of inadmissible custodial statements. *Id.* at 23 (citing *Harrison v.*

*United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *State v. Anson*, 2005 WI 96, 282 Wis.2d 629, 698 N.W.2d 776). Further, any error in admitting Call #6 was not harmless or trivial; the phone calls played for the jury were the only times that the jury heard Jordan speak[2] at trial. ECF No. 19-4 at 6-7.

The Wisconsin Court of Appeals affirmed the trial court's decision on both issues. ECF No. 19-5. In addressing the admission of the fake handgun, the court, citing Wisconsin law, concluded that the trial court properly exercised its discretion in admitting evidence of the fake handgun when considered in conjunction with Jordan's hiding from police and statements he made to Carter. *Id.* at ¶¶15-16. Even if it was error to admit the fake handgun, the court found that such error would be "harmless given the overwhelming evidence of Jordan's guilt." *Id.* at ¶17. Specifically, the court cited Jordan's admission of his role in the shooting to other persons, the police's recovery of the murder weapon from Jordan's bedroom at his mother's house, and the presence of Jordan's fingerprint on one of the cartridges inside the shotgun. *Id.* at ¶¶17-18.

In addressing the admission of Call #6, the appellate court declined to extend *Knapp*, which holds that physical evidence obtained as a direct result of an intentional *Miranda* violation must be suppressed under Wisconsin's constitution. *Id.* at ¶¶19-21. In contrast to the circumstances in cases cited by Jordan, at issue were "*voluntary* statements" made by Jordan. *Id.* at ¶21 (emphasis added). In addition to declining to extend the *Knapp* decision to the circumstances of Jordan's case, the appellate court found that any error in admitting Call #6 would also be harmless as the call was merely

---

[2] NB: Jordan did not testify at trial.

"one small piece of overwhelming evidence" leaving "no reasonable possibility" that an error here contributed to the ultimate outcome. *Id.* at ¶22.

Jordan then petitioned the Wisconsin Supreme Court for review on both the fake handgun and phone call issues. ECF No. 19-6. Jordan argued that the admissibility of Call #6 "raise[d] a substantial issue regarding the scope of the Wisconsin Constitution's prohibition of the fruits of a *Miranda* violation set forth in *State v. Knapp*." *Id.* at 13. *See also id.* at 22 ("Mr. Jordan asks the Supreme Court to review the scope of the principle in *Knapp* that evidence derived from a wrongful *Miranda* violation may not be used against a defendant."). Citing Wisconsin statutes and case law, Jordan reiterated his argument that the fake handgun was irrelevant, and its admission was unfairly prejudicial and confusing to the jury. *Id.* at 22-26. The Wisconsin Supreme Court declined review on June 15, 2016. ECF No. 19-8. Upon denial, Jordan filed a petition for writ of habeas corpus with this court. ECF No. 1; ECF No. 6.

## II. DISCUSSION

In his petition and briefs, Jordan challenges the inclusion of these two pieces of evidence. With respect to the fake handgun, Jordan reiterates that the fake handgun had no probative value, served only to confuse the jury and unfairly prejudice Jordan at trial, and therefore the trial court erred in admitting it. ECF No. 6 at 3. *See also* ECF No. 18 at 1-4. This was not harmless error, Jordan argues, but plain error that violated Jordan's due process rights under the Fourteenth Amendment. ECF No. 7 at 5. In his reply brief, Jordan also raises a Sixth Amendment argument, claiming that his right to present a defense was violated where the "mere purpose behind such introduction…was to prejudice Jordan, confuse and mislead [the jury]." ECF No. 22 at 3.

7

With respect to Call #6, Jordan argues that his Fifth Amendment right against self-incrimination was violated by Call #6's admission at trial. ECF No. 6 at 3. The rule laid out in *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899 should apply in this case to exclude the call on a fruit of the poisonous tree theory. ECF No. 7 at 4. Playing the recording at trial made Jordan a witness against himself, violating his right against self-incrimination. *Id. See also* ECF No. 18 at 6. In his reply brief, Jordan also makes arguments about the lack of authentication and identification of the voices on Call #6. ECF No. 22 at 5-6.

In response, the State argues that the Wisconsin Court of Appeals decision is one that rests on state law grounds and is not subject to review in federal habeas proceedings. ECF No. 19 at 5-6. The appellate court's decision is not contrary to or an unreasonable application of federal law, nor is it an unreasonable interpretation of the facts in light of the evidence presented. *Id*. Regarding the fake handgun, the State argues that Jordan's claim implicates only Wisconsin statutes and does not state a federal constitutional claim. ECF No. 21 at 6. The way Wisconsin interprets its own rules of evidence is not a federal matter, but purely a state law question. *Id*. Regarding Call #6, the State argues that the appellate court correctly declined to apply *Harrison v. United States* because the call was "wholly independent" of Jordan's suppressed statements to police and therefore did not violate his constitutional rights. *Id*. at 19. Finally, the State argues that even if I disagree with the Wisconsin Court Appeals' decision on the merits, any error was harmless[3] given the overwhelming weight of the evidence against Jordan. *Id*.

---

[3] Because I do not find reason to grant Jordan's petition on either claim, I do not reach any analysis of the parties' harmless error arguments.

A federal court is not required to construct legal arguments for a pro se petitioner. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). I have, however, done my best to construe petitioner's claims liberally. *See Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). For the reasons explained below, I deny Jordan's petition for writ of habeas corpus.

**A. Standard of review**

Jordan's petition arises under 28 U.S.C. § 2254. A district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief is unavailable to remedy errors of state law. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions")). If a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.[4] 28 U.S.C. § 2254(d).

"[O]n habeas review, federal courts are usually limited to a deferential review of the reasonableness, rather than the absolute correctness, of a state court

---

[4] Because Jordan's petition is based on the admissibility of these two pieces of evidence, both of which are questions of law, and does not challenge any state court's finding of fact, the "unreasonable determination of facts" provision in § 2254(d)(2) is inapplicable here.

9

decision." *Maier v. Smith*, 912 F.3d 1064, 1069 (7th Cir. 2019), *reh'g denied* (Feb. 14, 2019) (citing *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012)). "For purposes of reasonableness review, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.' " *Mosley*, 689 F.3d at 844 (quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770 (2011)). In reviewing the merits of a petition for habeas relief, I look to "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369,374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir.2003)). In this case, that decision is from the Wisconsin Court of Appeals. ECF No. 19-5.

Finally, I note that I do not consider any arguments that Jordan raises for the first time in his reply brief. This includes claims of Sixth Amendment right to present a defense violations and lack of authentication/identification for Call #6. Jordan did not raise these arguments in his petition or initial brief and therefore waives them. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997) (waiver of argument by not raising it in initial brief). *See also United States v. Feinberg,* 89 F.3d 333, 340–41 (7th Cir.1996), *cert. denied,* 519 U.S. 1133, 117 S.Ct. 997, 136 L.Ed.2d 876 (1997) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court.").

**B. Fake handgun**

Jordan alleges that inclusion of the fake handgun at trial violates his Fourteenth Amendment due process rights. The State argues that this is fundamentally a dispute

regarding a state evidence rule that is not subject to review by a federal habeas court and that Jordan pleads it as such. However, Jordan does in fact allege Fourteenth Amendment due process violations in his petition. *See* ECF No. 6 at 3 (specifically mentioning the Fourteenth Amendment); ECF No. 7 at 3 ("the state court failed to resolve Mr. Jordan's due process issue…"); ECF No. 7 at 5 ("there is only a plain-error, which violates Mr. Jordan [sic] Fourteenth Amendment Due Process rights.").

In general, questions of state evidentiary rulings are not subject to collateral review in habeas corpus proceedings. *See Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). But, a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial. *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (citing *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Federal courts do not review evidentiary questions in a state prisoner's habeas corpus proceeding unless the evidentiary ruling resulted in a denial of "fundamental fairness." *McKinney v. Hanks*, 210 F.3d 375 (7th Cir. 2000) (citing *Dudley v. Duckworth*, 854 F.2d 967, 970 (7th Cir.1988)). A petitioner can claim a right to relief if he can establish that an "incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." *McCaughtry*, 238 F.3d at 914 (citing *Thompkins v. Cohen,* 965 F.2d 330, 333 (7th Cir.1992)). *See also Watkins v. Meloy*, 95 F.3d 4, 6-7 (7th Cir. 1996) ("when the state merely fails to limit the prosecution's evidence, the only constitutional principle to which the defendant can appeal is a catch-all sense of due process"). So, while I would not analyze the appellate court's interpretation of Wisconsin's rules of

evidence, I would evaluate petitioner's claim against standards of due process as guaranteed by the Fourteenth Amendment.

Admission of evidence so unfairly prejudicial that it violates a defendant's due process right is a very high standard for defendants to prove. I must consider whether the alleged unfair prejudice stemming from this evidence firmly convinces "that but for the errors, the outcome of the trial probably would have been different," thus denying the petitioner his due process right to a fundamentally fair trial. *Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001) (quoting *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000)). If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission. *Watkins*, 95 F.3d at 7. Ultimately, federal courts do not review state-court evidentiary rulings unless a particular ruling violated due process by creating a likelihood that an innocent person was convicted. *Dressler v. Walker*, 409 F. App'x 947, 948 (7th Cir. 2011).

However, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). This means that, in the interest of comity, petitioners must "fairly present" federal claims to the state courts to give the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state

court. *Id.* at 366, 115 S.Ct. 887. Presenting the "same claim" in state court that he later seeks to make in federal court means that the petitioner must alert the state courts that he is relying on a provision of the federal constitution for relief. *Perruquet*, 390 F.3d at 513–14 (citing *Duncan*, 513 U.S. 364, 365–66, 115 S.Ct. 887). In deciding whether the state courts were so alerted, we look to a number of factors, including: " '(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.' " *Id.* at 519-20 (quoting *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir.2004)).

Where a petitioner has already pursued his state-court remedies and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief, but rather the separate but related doctrine of procedural default, which normally will preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Perruquet*, 390 F.3d at 514 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 & n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to

raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Id.* (citing *Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728 (1999)).

The State did not raise any procedural default arguments in its response to the petition or its brief. *See* ECF No. 19; ECF No. 21. A petitioner's procedural default does not deprive the federal court of jurisdiction over his habeas petition; rather, it is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive. *Perruquet*, 390 F.3d at 515 (citing *Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)). However, it is within the district court's discretion to consider the default issue *sua sponte* so long as the government has not manifested, implicitly or explicitly, a decision to forego the argument. *Varela v. United States*, 481 F.3d 932, 936 (7th Cir. 2007) (*Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir.1998)). Here, the government has not affirmatively manifested such a decision. *See, e.g., Whitfield v. Sternes*, 66 F. App'x 40, 43 (7th Cir. 2003) (finding that, despite government "failing to raise the issue in its response to Whitfield's petition," consideration of procedural default where petitioner did not fairly present claims to state courts was "within the [district] court's discretion."). As respondent has not argued the issue, I exercise my discretion to pass on raising the procedural default issue *sua sponte* and proceed to consider petitioner's due process claim.

In reviewing the record on petitioner's due process claim, I am not able to conclude that admission of the fake handgun clears the "likelihood that an innocent person was convicted" standard,[5] as explained in *Dressler v. Walker*, 409 F. App'x 947,

---

[5] This also may be characterized as a "fundamental miscarriage of justice." *See Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir. 1992) ("The only federal right in play is the general right to a fair trial, and to prevail on this ground a defendant must show that the errors or irregularities of which he complains

948 (7th Cir. 2011), that would result in finding a due process violation for want of a fundamentally fair trial. *See also Ferrier v. Duckworth*, 902 F.2d 545, 548 (7th Cir. 1990) ("only if the evidence is 'prejudicial,' in the sense of likely to lead to the conviction of an innocent person, is the defendant entitled to a new trial."). Otherwise strong and substantial evidence against petitioner in conjunction with the comparatively minor role that the fake handgun played in petitioner's trial prevent me from reaching such a conclusion. Petitioner made statements admitting his role in the shooting in significant detail to Sherita Carter. ECF No. 19-15 at 76-78. Petitioner told Carter that Haefner reached for his gun and that he told Haefner he would shoot him if he kept doing so. *Id*. Petitioner also admitted his role in the shooting to his mother. ECF No. 19-16 at 36-40 (admissibility addressed below). The murder weapon was recovered from petitioner's bedroom. ECF No. 19-15 at 56. Petitioner's fingerprint was found on a cartridge inside the murder weapon. ECF No. 19-16 at 27. Finally, petitioner's DNA was found on the murder weapon. *Id*. at 51-54. Given these facts, together with the minor role the fake handgun played at trial, I cannot find that admission of the fake handgun is a fundamental miscarriage of justice or likely led to the conviction of an innocent person, regardless of whether such admission was unfair to begin with. I cannot conclude that petitioner was denied his Fourteenth Amendment due process right to a fundamentally fair trial. Accordingly, I cannot grant petitioner habeas relief on relief on this claim.

---

probably caused a miscarriage of justice, that is, the conviction of an innocent person"); *Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir.1994).

## C. Call #6

Jordan argues that the admission of Call #6 at trial violated his Fifth Amendment right against self-incrimination. ECF No. 6 at 3; ECF No. 7 at 4 ("The conversation is improper fruit of a *Miranda* violation."); ECF No. 18 at 5-10. Jordan bases his argument largely on the Wisconsin Supreme Court's decision in *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899. Jordan also points to a handful of other state and federal cases, most notably *Harrison v. United States*, 392 U.S. 219, 88 S. Ct. 2008, 20 L. Ed. 2d 1047 (1968). *See also Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (excluding evidence as fruits of an illegal entry). In response, the State argues that "the police had nothing to do with Jordan's decision to call his mother to discuss what he had done and what he had told the police about it." ECF No. 21 at 17. The State did not introduce an illegally obtained statement, but rather a "completely voluntary statement… that was in no way the product of police or state actors." *Id.* at 18. The police did not seek to exploit an illegality as required for suppression under *Wong Sun*. *Id.* at 19. In short, the remedy of suppression does not extend to a defendant's "subsequent and independent conduct." *Id.* at 17.

*State v. Knapp*, is a Wisconsin Supreme Court case, interpreting the State Constitution of Wisconsin, that affords extra protections to criminal defendants. In other words, *Knapp* is a Wisconsin rule that applies in addition to federal *Miranda* protections, affording further protection to criminal defendants in Wisconsin. As part of Wisconsin's constitution, Wisconsin's courts get to decide the scope of the *Knapp* rule. As such, it is entirely within the realm of state law. As a federal court limited by federal habeas review, I do not evaluate any claims requesting I extend the *Knapp* rule to the

16

circumstances of this case. Rather, I evaluate this case's circumstances only against clearly established federal law as determined by the U.S. Supreme Court. 28 U.S.C. § 2254(d)(1).

Before subjecting a person to custodial interrogation, the police must advise the person of his rights to silence and counsel. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966). *Miranda* warnings must be given only when a suspect is both in custody and subject to government interrogation. *See Illinois v. Perkins*, 496 U.S. 292, 297, 110 S. Ct. 2394, 2397, 110 L. Ed. 2d 243 (1990) ("It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation"). For *Miranda* purposes, the term "interrogation" refers to any words or action on the part of the police, other than those normally attendant on arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *Miranda*, 384 U.S. at 478, 86 S. Ct. 1602.

Here, the original *Miranda* violation may be a but for cause of the statements made by Jordan in Call #6, *i.e.*, Jordan would never have made those statements to his mother without the original *Miranda* infraction by the police. However, the inclusion of those statements at trial does not violate federal constitutional protections because *Miranda* protections are focused on custodial interrogations. Jordan's phone conversation with his mother from prison is not an "interrogation" as defined by any U.S. Supreme Court precedent. Jordan was not being questioned by police at the time he

made the statements that were later used against him at trial. Rather, Jordan made the admitted statements freely and voluntarily several weeks later, with no compelling influences and with the knowledge that his call may be recorded. *See* ECF No. 19-16 at 35-38. Thus, Jordan's Fifth Amendment self-incrimination arguments fall short against federal law as determined by the U.S. Supreme Court and he is not entitled to habeas relief on this claim.

Petitioner does raise some interesting points in his fruit of the poisonous tree argument, specifically with reference to *Harrison*, however his argument is not applicable where the statement admitted was not illegally obtained. *Harrison* involved the use of illegally obtained confessions made during a custodial interrogation which compelled the defendant to testify to rebut the confessions. On remand, after the confessions were found inadmissible and a new trial was ordered, the prosecution introduced the defendant's prior testimony, which placed the defendant, "shotgun in hand, at the scene of the crime." *Harrison*, 392 U.S. at 221, 88 S. Ct. 2008. The U.S. Supreme Court held this testimonial admission of guilt inadmissible. *Id.* at 226, 88 S. Ct. 2008. *Harrison* does not apply here, where the statements introduced were not the statements Jordan made to the police, but rather the statements he made to his mother echoing what he told police. I can discern no appropriate authority that prohibits admitting legally-procured statements, made by a defendant, that echo or repeat previous statements he made that were held inadmissible under *Miranda*.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Jordan's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to

Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 16th day of July, 2019.

                                              s/Lynn Adelman
                                              LYNN ADELMAN
                                              District Judge